THE CITY OF NEW LONDON *vs.* STEPHEN A. PERKINS.

Second Judicial District, Norwich, April Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

It is a general rule that property owned by a municipal corporation for public use is not taxable, unless it is made so by express legislation.

Ferries are public highways; and the maintenance by a city of a ferry for public travel across a navigable river, under statutory regulation, is a public purpose or use, although the ferry may be operated by a lessee and the city may derive a revenue from its rental.

Equity is reluctant to enjoin the collection of a tax, since the operations

of the local government might thereby be financially embarrassed. But this principle, or rule of noninterference by injunction, has but little weight where the tax in question affects but a single taxpayer, and none at all where the property which has been assessed is by law exempt from taxation. Under such circumstances the grievance is of so irreparable a nature as to merit preventive relief by injunction.

In the present case the defendant was attempting to collect a tax by selling the terminus and ferry-landing of a ferry owned by the plaintiff city, which it was compelled by law to keep open as an important thoroughfare of public travel, and which was exempt by law from taxation. *Held:*—

1. That an injunction was properly granted to restrain such sale, especially as General Statutes, § 2407, as amended by chapter 145 of the Public Acts of 1903, provided a simple remedy for the collection of taxes by an ordinary action at law.

2. That the plaintiff was not estopped from seeking an injunction against the enforcement of the tax by its failure to appeal from the assessment to the board of relief, since it did not appear that any notice of the assessment was given to it as required by statute.

Argued April 30th—decided July 25th, 1913.

SUIT to enjoin the defendant, as tax collector of the town of Groton, from selling for taxes certain land alleged to be owned and used by the plaintiff as a public ferry-landing, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Herbert W. Rathbun,* for the appellant (defendant).

*William J. Brennan,* for the appellee (plaintiff).

RORABACK, J. The defendant in his answer admitted all the allegations of the complaint, except such as alleged that the property of the plaintiff, which the defendant endeavored to sell, was used solely for public purposes, and that the plaintiff had no adequate remedy at law, and would suffer great and irreparable injury.

The property against which the taxes were levied, and which the defendant, as tax collector, attempted to sell, was the terminus and ferry-landing of the New London ferry, situated in the town of Groton, owned by the plaintiff, and operated by a lessee of the plaintiff between the towns of New London and Groton. This ferry-landing and terminus was the only one owned by the plaintiff in the town of Groton. There was no other ferry running across the Thames River from Long Island Sound northerly to the city of Norwich, fourteen miles from the city of New London. There were no means other than this ferry for transporting vehicles and foot passengers between the two towns. The property of the plaintiff was used solely for the purpose of a ferry-slip and landing in connection with the operation of its ferry, and was all the property owned by the plaintiff situated in Groton at the time of the levy for the taxes in question.

The plaintiff was and is the sole owner of the franchise for the operation of this ferry across the Thames River, and it was the duty of the plaintiff to operate and maintain it under certain conditions regulated by the special laws of this State. 6 Special Laws, pp. 307, 577, 949; 10 id. p. 166; 12 id. p. 1064.

The plaintiff made no appearance before the board of assessors or board of relief of the town of Groton to make any claim that the property in question was exempt from taxation.

Section 2315 of the General Statutes exempts from taxation all property held by municipalities for public use, with certain exceptions which do not apply to the present case. *West Hartford* v. *Water Commissioners*, 44 Conn. 360, 368.

The city of New London is the owner of the franchise for the operation of this ferry. This franchise dates back to the year 1705, when the General Court of

Connecticut divided the then existing township of New London into two townships: the one on the east side of the Thames River known as the town of Groton, and the one on the west side as the town of New London. This division was accepted by the inhabitants of both towns, and they mutually agreed "that the ferry and the land and house belonging to it shall be and remain for the benefit of a free-school in the town on the west side of the river." 4 Colonial Records, p. 510.

Since the town of Groton was set off from the town of New London, in 1705, there has been no action by the General Assembly of the State of Connecticut interfering with the ownership of this ferry by the town. of New London. The operation of this ferry has been regulated by the special laws of the State of Connecticut.

As a link of transportation by land, this ferry forms a part of a public highway, or a connection between New London and Groton, in which the public has rights; and as such it is a thing of public interest in which the public have a right of way or use at all times on paying certain specified tolls, regulated and prescribed by the special statutes of the State. Property taken for toll-bridges and ferries is for a public use. They are public highways. *Southern Illinois & M. Bridge Co.* v. *Stone*, 174 Mo. 1, 22, 73 S. W. 453, 457, 63 L. R. A. 301 (citing *Arnold* v. *Covington & C. Bridge Co.*, 62 Ky. (1 Duv.) 372); *State* v. *Maine*, 27 Conn. 641, 71 Amer. Dec. 89. "Ferries have been not only created, but have been modified and suppressed, at the pleasure of the legislature, like public highways, which in fact they are. Each one is confined to such tolls, and subject to such regulations, as are prescribed by the statute. It appears to us from all we can learn on the subject, that ferries were at first, as many of them still are, considered and treated as burthens or duties imposed on towns by the

legislature for the benefit of public travel." *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn. 210, 229. The property in question is thus devoted to a public use by act of the legislature. The municipality is by delegation acting for the State in conducting the ferry as a purely governmental function.

It is a general rule that property which is owned by a municipal corporation cannot become the subject of taxation unless it is so provided by express legislation. Thus, for example, the city of Brooklyn was held not to have the power to impose a tax upon land located within that city and owned and used as a landing for a ferry by the city of New York. The exemption of such property was held to apply for the benefit of a lessee. *People ex rel. Mayor* v. *Assessors*, 111 N. Y. 505, 19 N. E. 90. The same ruling was made in Texas in respect to a public wharf. *Galveston Wharf Co.* v. *Galveston*, 63 Tex. 14. The fact that the city of New London operates the ferry through lessees, and derives its revenue from a rental, does not make the property in question taxable. *Rochester* v. *Rush*, 80 N. Y. 302; *Darlington* v. *Mayor of New York*, 31 N. Y. 164; 4 Dillon on Municipal Corporations (5th Ed.) p. 2431, and cases cited. These considerations lead to the conclusion that this property was not taxable, and that the proceedings as to its assessment by the town of Groton should not be sustained.

The defendant contends that the plaintiff is estopped from claiming the relief sought; that its remedy is barred because it omitted to apply to the board of relief of the town of Groton. It does not appear that the plaintiff had any remedy which it failed to pursue. It is not shown that any notice was given as to the action of the assessors or board of relief of the town of Groton. This is not a reassessment of a tax claimed to be void by reason of irregularity. Apparently it is a new and original tax assessed without authority and

without notice. The fact that New London failed to appear before the board of relief should not be a bar to a suit to obtain relief against the assessment of an illegal tax, unless it also appears that the statutory notice was given. To sustain this contention of the defendant would deprive the plaintiff of its day in court, to which it is entitled. *Phelps* v. *Thurston*, 47 Conn. 477, 485; 1 High on Injunctions (4th Ed.) p. 463, § 495.

The plaintiff claims that a permanent injunction should be issued restraining the defendant, as tax collector, from selling the land of the plaintiff, for the reason that the land in question is land used for public purposes, that it is exempt from taxation, and that the sale of this property by the defendant would interfere with the use of its ferry by the public, and would cause an irreparable injury to the plaintiff.

It has been declared in many cases that injunction does not lie against the exercise of the power of taxation unless some special reason be shown for equitable interference. In administering this form of relief, personal consequences to the immediate parties should be carefully distinguishable from those which result to the public. No great mischief can result from enjoining the collection of a tax which is illegal or unjust in some particular affecting only a single taxpayer; but where to adjudge it illegal would be to defeat the whole levy or assessment, the court should act with extreme caution, lest in awarding relief to one or several individuals all the operations of the government would be embarrassed by arresting the only supply of revenue. No court of equity will therefore allow its injunction to issue to restrain the collection of a tax, except where it may be necessary to protect the rights of the citizen whose property is taxed from irreparable injury, and when he has no adequate remedy by the process of law. 1 Spelling on Extraordinary Remedies (2d Ed.) pp. 535,

536; 2 Cooley on Taxation (3d Ed.) p. 1422; 1 High on Injunctions (4th Ed.) p. 498, § 524; 4 Dillon on Municipal Corporations (5th Ed.) p. 2786. Where an injury is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard, it is irreparable. "Whether damages are to be viewed by a court of equity as 'irreparable' or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." *Robertson* v. *Lewis,* 77 Conn. 345, 346, 59 Atl. 409.

"An important exception to the general doctrine of non-interference by injunction against the collection of the revenue because of illegality in the tax is recognized in that class of cases where the relief is sought against a tax assessed upon property which has been exempted by law from taxation. Indeed, the exception has been so uniformly recognized as to become of itself a governing rule in the class of cases now under consideration. And it may be laid down as the established doctrine of the courts that the attempted enforcement of a tax upon property which has been exempted by proper legislative authority from the burdens of taxation, constitutes a grievance of so irreparable a nature as to merit preventive relief by injunction." 1 High on Injunctions (4th Ed.) p. 504, § 530.

"All taxes, properly assessed, shall become a debt due from the person, persons, or corporation, against whom they are respectively assessed, to the city, town, district, or community in whose favor they are assessed, and may be, in addition to the other remedies provided by law, recovered by any proper action, in the name of the community in whose favor they are assessed." General Statutes, § 2407, as amended by Public Acts of 1903, p. 108, Chap. 145, § 3. The primary object of this statute was to provide a simple remedy for the collection

of taxes by an ordinary action.  *Cromwell* v. *Savage*, 85
Conn. 376, 377, 82 Atl. 972.  No attempt was made to
enforce the payment of the assessment in question in
the manner indicated by this statute, but an election
was made to collect it by making a levy upon the
terminus and ferry-landing of the plaintiff which, as we
have seen, was used solely for public purposes, and was
devoted to a public use.  An examination of the Special
Acts hereinbefore referred to discloses that the city of
New London, to escape the penalties imposed by these
statutes, was compelled to keep open and operate this
ferry at stated times every day in the year, and to
transport passengers and the like for certain rates and
fares.  This could not be done without the landing-
place and other facilities which the defendant has
levied upon and threatened to sell for the collection of a
tax which was improperly assessed.  The trial court
found that if the defendant is permitted to sell the
property in question, as he threatened to do, such sale
would result in serious interference with the operation
of this ferry, and that it would cause irreparable injury
to the plaintiff.  There is nothing in the facts of the
case to show that the court was not justified in reaching
these conclusions.  It follows, therefore, that the in-
junction should be made permanent.

There is no error.

In this opinion the other judges concurred.