[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS COUNTERCLAIMS ISSUE
CT Page 11637
Should the plaintiff's motion to dismiss the defendants' counterclaim for lack of subject matter jurisdiction be granted on the ground that a claim of improper termination of water service is a matter of primary jurisdiction with the Department of Public Utility Control under General Statutes, § 4-176.
On December 20, 1993, the plaintiff, Sound View Water Improvement Company, Inc., (Sound View), filed a complaint against the defendants, Joseph E. Shea and Judith Shea, (Shea), seeking payment for water service allegedly supplied. to the defendants for the period beginning April 15, 1993, and ending November 15, 1993. In their amended answer, filed June 3, 1994, the defendants raise two counterclaims. First, the defendants claim that on September 3, 1993 the plaintiff terminated water service in violation of General Statutes, §§ 16-262d(a) and 16-262c(a). Specifically, the defendants claim that the plaintiff failed to give written notice of delinquency and impending termination; caused cessation of service on a Friday; and caused cessation of service at a time during which the business offices of the plaintiff were not open to the public. Secondly, the defendants claim that the plaintiff's actions constitute an unfair or deceptive act or practice in violation of General Statutes, 42-110a, et seq.
On July 25, 1994, the plaintiff filed a motion to dismiss the defendants' counterclaims for lack of subject matter jurisdiction. The plaintiff contends that the issue of improper termination of residential water service is a matter of primary jurisdiction with the Department of Public Utility Control, (DPUC), under General Statutes, § 4-176. Thus, the plaintiff argues, the defendants are required to exhaust their administrative remedies before resorting to the Superior Court. In their memorandum in opposition to the plaintiff's motion to dismiss, filed August 12, 1994, the defendants argue that the doctrine of exhaustion of administrative remedies is inapplicable because wrongful termination of water service is not an issue peculiarly within the knowledge of the DPUC, a state agency. The defendants request that the court deny the plaintiff's motion to dismiss, or, in the alternative, stay the action pending a determination by the agency of the issue CT Page 11638 of wrongful termination.
A motion to dismiss may be used to contest the court's subject matter jurisdiction. McCutcheon Burr, Inc. v.Berman, 218 Conn. 512, 517, 590 A.2d 438 (1991). Both the primary jurisdiction doctrine and the exhaustion of remedies doctrine implicate the court's subject matter jurisdiction.Concerned Citizens of Sterling v. Sterling, 204 Conn. 551,556, 529 A.2d 66 (1987); see 2 K. Davis, Administrative Law Treatise, 3d Ed., 1994, § 14.1, p. 271.
1. Distinction between Exhaustion of Remedies Doctrine and Doctrine of Primary Jurisdiction.
In their memoranda, the parties do not distinguish between the primary jurisdiction and exhaustion of remedies doctrines. In fact, the plaintiff argues that because the issue is within the primary jurisdiction of the DPUC, the defendants must exhaust their administrative remedies. The doctrine of primary jurisdiction, however, differs from the doctrine of exhaustion of remedies.
"The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun . . . ." Sharkey v. Stamford, 196 Conn. 253, 255-56,492 A.2d 155 (1985). The doctrine "requires a party to exhaust [administrative] remedies before seeking judicial relief and contemplates claims that are initially enforceable exclusively by administrative action." Tucker v. Cordani,
Superior Court, judicial district of Litchfield, Docket No. 059375 (August 25, 1992). "[W]here there is no administrative proceeding under way, the exhaustion doctrine has no application." Sharkey v. Stamford, supra, 196 Conn. 256. "In contrast, primary jurisdiction situations arise in cases where a [party], in the absence of pending administrative proceedings, invokes the original jurisdiction of the court to decide the merits of the controversy." Id., 256. "The doctrine comes into play whenever enforcement of . . . [a] claim requires the resolution of issues that a regulatory scheme has placed within the special competence of an administrative body." Tucker v. Cordani, supra, No. 059375.
The present action involves an issue of primary jurisdiction because the defendants have not sought administrative action with respect to their counterclaims. CT Page 11639 For purposes of this memorandum the issue will be referred to as one of primary jurisdiction although it is noted that "the rationale underlying primary jurisdiction is in substance much the same as that which supports exhaustion." Sharkey v.Stamford, supra, 196 Conn. 256.
2. Arguments Raised by the Parties.
The plaintiff claims that the action is a matter of primary, but not exclusive, jurisdiction of the DPUC, citing General Statutes, § 4-176. This section states in pertinent part: "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation . . . or a final decision on a matter within the jurisdiction of the agency." The plaintiff cites Beck v. Board of Trustees ofState Colleges, 32 Conn. Sup. 153 (Super.Ct. 1975) for the proposition that since the Uniform Administrative Procedure Act (UAPA) provides for declaratory rulings to review state agency regulations, the UAPA must be construed to mean that a party must exhaust his administrative remedies before he has recourse to the courts. Beck, however, is distinguishable from the present case. The plaintiffs in Beck sought a temporary injunction enjoining the defendant from implementing regulations which were allegedly not adopted pursuant to the provisions of the UAPA. The court denied the application for the temporary injunction noting that the plaintiff, having based its claim on the applicability of the UAPA to the regulations in question, cannot then seek to avoid the UAPA's remedial provisions. The court stated that the "[t]he UAPA not only establishes rules for the adoption of regulations but also provides procedures for their reviewability." Id. In contrast, the defendants in the present action do not base their counterclaims on any rulemaking provision of the UAPA.
In Polymer Resources, Ltd. v. Keeney, 227 Conn. 545,630 A.2d 1304 (1993), also relied on by the plaintiff in this case, the plaintiff sought to enjoin the defendant, the commissioner of environmental protection, from enforcing an administrative order requiring the plaintiff to perform certain emission control tests. The court held that the trial court lacked subject matter jurisdiction to hear the application for injunctive relief because Polymer had failed to exhaust its administrative remedies. The court stated that Polymer should have requested a declaratory ruling from the commissioner regarding his authority to order the emission CT Page 11640 tests. Notably, the issue in Polymer Resources was one of exhaustion of remedies and, as argued by the defendant in the present action, was one within the agency's expertise to resolve.
The defendants claim that the issue of wrongful termination is not one peculiarly within the expertise of the agency. The defendants note that the plaintiff has alleged money due and "has not attempted to invoke any agency decision to establish its right to a claim." The defendants rely onBrooklyn Union Gas Co. v. MacGregor's Custom Coach, Inc.,460 N.Y.S.2d 694, 118 Misc.2d 418 (1983), a case factually similar to the present action. In that case the plaintiff gas company sought compensation for consumption of unmetered gas due to an alleged bypass. Id., 695. The defendant denied the allegations and counterclaimed for improper termination of service. Id. The plaintiff moved to dismiss the defendant's counterclaim under the doctrine of primary jurisdiction of an administrative agency, therein the Public Service Commission. Id. The court described the primary jurisdiction doctrine as one in which "the Court, although possessed of concurrent jurisdiction, will defer to the judgment of an administrative agency . . . where that agency has special competence in that particular area." Id. The court noted that "neither the complaint, the answer nor the motion papers demonstrate that . . . [the] matter must lie within the area of primary agency expertise and jurisdiction." Id. The court stated that referral to an agency occurs only where rules were followed by the plaintiff and the cause of action is clearly predicated thereon. Id., 696. Thus, the court stated that the plaintiff must first set forth in its complaint allegations as to compliance with the rules and procedures of the agency. The defendant, in response thereto, must specify any allegations with respect to violations of the agency rules regarding the cessation of service. Id. Recovery would then depend upon the application and interpretation of the rules of the agency. Id. Where, however, it is claimed that a proper rule was violated, the court must resolve the issue. Id.
3. Conclusion.
The doctrine of primary jurisdiction "comes into play whenever enforcement of . . . [a] claim requires the resolution of issues that a regulatory scheme has placed within the special competence of an administrative body." CT Page 11641Tucker v. Cordani, supra, No. 059375. "The doctrine of primary jurisdiction, like exhaustion, is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." (Internal quotation marks omitted.) Sharkey v. Stamford, supra,196 Conn. 256. "[A] court should not act upon subject matter that is peculiarly within the agency's specialized field without giving the agency an opportunity to apply its expertise, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements." Id.
There is, however, "no fixed formula for determining whether an agency has primary jurisdiction over a dispute . . . ." 2 K. Davis, Administrative Law Treatise, 3d Ed., 1994, § 14.1, p. 272. The courts consider several factors, including "(1) the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue, (2) the need for uniform resolution of the issue, and (3) the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory duties." Id.
On the basis of the foregoing, the court finds that the defendants' counterclaims fall within the primary jurisdiction of the DPUC. Thus, the plaintiff's motion to dismiss should be granted. Resolution of the issues raised in the defendants' counterclaims do require the expertise of the DPUC.
The defendants' counterclaims are within the primary jurisdiction of the DPUC. The defendants then request that the court stay the action. Under the primary jurisdiction doctrine, "the judicial process is suspended pending referral of . . . issues to the administrative body . . . ." Mazzolav. Southern New England Telephone Co., 169 Conn. 344, 349,363 A.2d 170 (1975). The practice in the federal courts is to stay rather than dismiss actions "when resolution of a claim cognizable in a federal court must await determination by an administrative-agency having primary jurisdiction." UnitedStates v. Michigan National Corp., 419 U.S. F; 4-5,95 S.Ct. 10, 42 L.Ed.2d 1 (1974); State v. State Employees' ReviewBoard, Superior Court, judicial district of Hartford, Docket No. 0703246 (October 13, 1993). CT Page 11642
In this case, since there was no application to the DPUC, no purpose would be served in staying the action of the plaintiff. It should be decided independent of the counterclaim. Because the CUTPA claim depends upon a favorable resolution of the first count of the counterclaim, it also must be dismissed.
Accordingly, the counterclaim is dismissed.
Hurley, J.